UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIANNA PLOSS,

    Plaintiff,

v.

MASACHUSETTS STATE POLICE,

    Defendant,

Civil Action No.:

## COMPLAINT AND JURY TRIAL DEMAND

### I. PARTIES

1. Plaintiff, Dianna Ploss, (hereinafter, the "Plaintiff") is a resident of Boston, Massachusetts.

2. Defendant, the Massachusetts State Police (hereinafter, "MSP") "serves as the statewide law enforcement agency and maintains investigative, tactical, and support units throughout the Commonwealth."

3. The MSP headquarters is located at 470 Worcester Road, Framingham, Massachusetts 01702.

4. Per the MSP website, The Massachusetts State Police offers an array of public information services to ensure that the Commonwealth is protected to the highest standards of public safety.

5. The MSP is an organization under the purview of the Executive Office of Public Safety and Security, (hereinafter, ("EOPSS"). "EOPSS is responsible for the policy development and budgetary oversight of its secretariat agencies, independent

programs, and several boards which aid in crime prevention, homeland security preparedness, and ensuring the safety of residents and visitors in the Commonwealth."

6. The EOPSS is located at 1 Ashburton Place, Suite 2133, Boston, Massachusetts 02108.

## II.  JURISDICTION

7. The Court has jurisdiction in this matter pursuant to 28 U.S.C §1331, 28 U.S.C §1343, and 42 U.S.C § 1983. Additionally, the Court may exercise supplemental subject matter jurisdiction over all of Plaintiff's state law claims under 28 U.S.C § 1367.

## III.  FACTS

8. On or about January 2, 2021, Plaintiff exercised her First Amendment rights by attending the weekly rally which was held in support of then-President Donald J. Trump (hereinafter, the "Rally").

9. The Rally was located directly across the street from the home of former Governor, Charles Baker, (hereinafter, "Baker"), at 49 Monument Avenue, Swampscott, Massachusetts 01907.

10.  At approximately 9:00 A.M., on January 2, 2021, Plaintiff was physically approached by a group of about fifteen (15) people, (hereinafter, "Crowd"), one of whom knocked her tripod and camera to the ground.

11. This frightening and physical attack forced Plaintiff to move her location to directly in front of Baker's home, where dozens of MSP officers were lined up, some of whom witnessed this first physical attack on Plaintiff.

12. The Crowd followed Plaintiff across the street.

13. The Crowd of fifteen (15) people progressively grew to about twenty-five (25) or so people, some of whom stood within a foot or less of Plaintiff, even touching her, with their own bodies or a bullhorn, (*See* **Exhibits 1 and 2**).

14. Some of the Crowd attended this event after seeing a fraudulent and provocative Facebook post using Plaintiff's likeness. This post, unknown to Plaintiff at that time, incited the Crowd.

15. At some point early on at the Rally, Plaintiff was joined by three (3) other women and one (1) man. Two (2) of these women were over the age of sixty-five (65). One (1) of these women walked with a cane. The lone man was over the age of sixty (60).

16. The Crowd physically surrounded Plaintiff and those with her, yelling in their ears with the bullhorns, and physically pushing them.

17. The MSP, who were lined up on the sidewalk at the property line of Baker's home, failed to stop the Crowd from assaulting Plaintiff and those with her.

18. At one point during the Rally, two men began a vicious and violent physical attack on Plaintiff using a full, twenty-four (24) ounce can of Twisted Tea.

19. These men are known as Stephen Ford, (hereinafter, "Ford"), and Joseph Antuan Castro Del Rio, (hereinafter, "Del Rio"), both of Massachusetts.

20. Ford and Del Rio held the full, twenty-four (24) ounce Twisted Tea can in her face, while restraining her in a headlock for approximately eight (8) minutes, (*See* **Exhibits 3, 4 and 5**).

21. The Plaintiff plead for help from the MSP during this vicious and violent physical attack on her.

22. One MSP member replied to Plaintiff's cries for help while she was being restrained in a head lock, "He can do that all day long if he wants."

23. This unknown MSP member was referring to Del Rio.

24. This unknown MSP member is seen in **Exhibit 6** speaking with Del Rio.

25. Del Rio and Ford's behavior towards Plaintiff was so egregious that dozens and dozens of people from across the country called both the MSP and Swampscott Police Department to report the assault and battery in progress.

26. Del Rio and Ford's behavior towards Plaintiff put her in imminent fear for her life and safety.

27. The failure of the MSP to prevent the assault and battery of Plaintiff by the Crowd, Del Rio and Ford, directly led to the Plaintiff's feeling of imminent danger.

28. Due to failure of the MSP, Plaintiff has, and continues, to suffer with symptoms of Post Traumatic Stress Disorder (PTSD), including but not limited to nightmares, hypervigilance, hyper startle reflex, and flashbacks.

## CLAIMS FOR RELIEF

## COUNT 1

## DEPRIVATION OF FEDERAL CIVIL RIGHTS PURSUANT TO 42 U.S.C § 1983

29. Paragraphs 1-28 are referenced and incorporated into Count I.

30. At all times relevant hereto, the Defendant was acting "under the color of state law" within the meaning of 42 U.S.C § 1983.

31. As a result of the acts of the Defendant, under the color of law, as alleged herein, and as a result of their deliberate indifference to the stalking and harassment of Plaintiff, Plaintiff was deprived of her right guaranteed to her by the laws of the Constitution of the United States of America, and the Commonwealth of Massachusetts Declaration of Rights, including her right to the free exercise of speech and assembly.

32. As a result, Plaintiff has been caused to be placed in imminent fear for her life and safety and has, and continues, to suffer with symptoms of Post Traumatic Stress Disorder (PTSD), including but not limited to nightmares, hypervigilance, hyper startle reflex, and flashbacks.

## COUNT II

## NEGLIGENCE

33. Paragraphs 1-32 are referenced and incorporated into Count II.

34. Defendant owed Plaintiff a duty of care.

35. MSP negligently breached its duty of care owed to Plaintiff by failing to properly train and monitor members of the MSP, failing to abide by the Constitution under the laws and regulations of the United States of America and the Commonwealth of Massachusetts in failing to protect Plaintiff's Constitutional rights.

36. Plaintiff suffered injuries as a result of Defendant's breach of duty to her.

37. Defendant's breaches of duty were the proximate cause of Plaintiff's injuries and Plaintiff is entitled to be compensated for same in an amount to be determined at trial.

38. Plaintiff has complied with all notices and presentment requirements by timely making demand on the appropriate authority under Massachusetts General Laws c.258, (*See* **Exhibit 7**).

39. The MSP has failed to make a reasonable settlement, or any other offer, with respect to such demand.

## COUNT III

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

40. Paragraphs 1-39 are referenced and incorporated into Count III.

41. Through the conduct alleged in this Complaint, the MSP intended to inflict emotional distress upon Plaintiff or knew or should have known that emotional distress was likely to result as a result of their conduct.

42. The conduct of the MSP was extreme, outrageous, beyond all possible bounds of decency and was utterly intolerable in an otherwise civilized community.

43. The conduct of Defendant caused Plaintiff to suffer extreme emotional distress.

44. The emotional distress of Plaintiff has been severe and of a nature that no reasonable person could be expected to endure.

45. Plaintiff is entitled to be compensated for all harm caused by the emotional distress inflicted upon her by the Defendant in an amount to be determined at trial.

46. Plaintiff has complied with all notices and presentment requirements by timely making demand on the appropriate authority under Massachusetts General Laws c.258.

47. The Defendant has failed to make a reasonable offer, or any offer, with respect to such demand.

**WHEREFORE, PLAINTIFF PRAYS THAT THIS HONORABLE COURT:**

Enter Judgment against the Defendant and for damages as follows:

1. An amount to be determined at trial of this matter, but at minimum, Two Million Dollars ("$2,000,000.00") for general costs and damages;

2. For general damages in an amount to be determined for PTSD, nightmares, hypervigilance, hyper startle reflex and flashbacks;

3. For all reasonable attorney's fees;

4. For all applicable interests and related costs;

5. For the costs of suit incurred herein, and;

6. For all other relief this Honorable Court deems meet, and just.

**<u>The Plaintiff demands a trial by jury on all counts.</u>**

                                                          Respectfully submitted,
                                                          The Plaintiff,
                                                          Dianna Ploss,
                                                          By her attorney,

DATED: December 29, 2023

                                                          */s/ Richard C. Chambers, Jr., Esq.*
                                                          Richard C. Chambers, Jr., Esq.
                                                          BBO#: 651251
                                                          Chambers Law Office
                                                          220 Broadway, Suite 404
                                                          Lynnfield, MA 01940
                                                          Office: (781) 581-2031
                                                          Cell: (781) 363-1773
                                                          Fax: (781) 581-8449
                                                          Email: Richard@chamberslawoffice.com